**SCOTTSDALE MALL,**
**Plaintiff-Appellant,**

v.

**STATE OF INDIANA and Indiana State Highway Commission et al.,**
**Defendants-Appellees.**

**No. 76–1632.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1976.
Decided Feb. 16, 1977.

Harrison W. Smith, Jr., Columbus, Ohio, William P. Wooden, Indianapolis, Ind., for plaintiff-appellant.

Theodore L. Sendak, Atty. Gen., Walter F. Lockhart, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Defendants-Appellees State of Indiana and The Indiana State Highway Commission withdrew a state highway project from a federal-aid highway program (23 U.S.C. § 101 *et seq.*), and claim a right to proceed with state funds in the final stages and construction of the project. By electing to withdraw the project from federal funding consideration, defendants have avoided compliance with the environmental impact statement requirements which are made necessary for "major federal actions" by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.* We are called upon to determine whether the project in this case is a "major federal action," and whether the state may avoid the requirements of NEPA by withdrawing the project from federal programming.

Plaintiff, an Ohio partnership, owns a shopping center through which defendants were about to construct a highway. The district court granted a preliminary injunction against defendants on the ground that there had been no compliance with federal environmental statutes. Following a trial on the merits, the district court dissolved the preliminary injunction and entered judgment in favor of defendants. We vacate that judgment and remand.

The facts are not in dispute. The project which is the focal point of the controversy in this case is a proposed development of a 28-mile-long by-pass around the South

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

Bend-Elkhart metropolitan area in Northern Indiana. As the result of a study initiated more than twenty years ago by defendant Highway Commission, a four-lane limited access highway was conceived to alleviate traffic congestion along Highway U.S. 20, which runs generally in an east-west direction through the center of the South Bend-Elkhart metropolitan area. The western terminus of the by-pass exists at a point on U.S. 20 west of South Bend; the eastern terminus is to be located at a point east of the City of Elkhart.

The by-pass project was programmed to be constructed as a federal project in four segments. One segment, from the western terminus on U.S. 20 to a point on U.S. 31 south of the City of South Bend, already has been constructed with an expenditure of approximately 6.7 million dollars in federal funds. This segment appears to occupy roughly one-fourth of the total mileage of the project. The remainder of the project, approximately 20 miles in length, was planned to be constructed as a federally funded program in three segments since 1966 or 1967. The First Segment was planned to run due east from the eastern terminus of the segment which had already been constructed to a point on State Road 331, a distance of 3.8 miles. It is the construction of this First Segment which gives rise to the controversy in this case.

In 1968 plaintiff purchased the site of the present Scottsdale Mall, a shopping center complex in South Bend. The district court found that, as presently planned, the 3.8 mile First Segment of the by-pass would bisect plaintiff's property, which is located near the western terminus of the proposed First Segment. Construction of the seg-

ment would permanently remove 599 parking spaces from the shopping center, and would render inoperative the expansion potential which is part of the inherent design of the shopping center. As the district court further found, the location for the corridor of the First Segment as well as the remaining segments was established in 1967 after considerable discussion regarding the general location of the proposed by-pass. At the time of acquiring the site of the shopping center, plaintiff knew that the by-pass corridor would bisect its property.[1]

On December 5, 1974, the Highway Commission advised the plaintiff that it intended to proceed with the First Segment as originally proposed. As of that date, substantial steps had been taken under the Federal-Aid Highway Act to construct the remaining segments with the assistance of federal funds. Plaintiff then instituted this action, seeking to enjoin the State of Indiana and its Highway Commission from proceeding with the plans to construct the First Segment on the grounds that the selection of the route as proposed by the State of Indiana was arbitrary and capricious, and that the State had not filed an Environmental Impact Statement (EIS) as required by federal law. The district court granted the preliminary injunction on January 20, 1975. The defendants then decided to construct the First Segment and remaining segments without federal assistance and took steps to "de-program" this project from further federal consideration.[2]

Our review of the record reveals a project with an extensive history of federal-state involvement. Since as early as 1966, the three remaining segments of the by-pass were scheduled, programmed, and worked

1. In 1972, plaintiff acquired a 20-acre parcel of land adjacent to the shopping center for purposes of expanding the facility. On June 11, 1974, plaintiff offered to transfer this parcel with appropriate waivers to defendants if defendants would agree to relocate the center line of the First Segment on the 20-acre tract. Plaintiff asserted that the acquisition costs of its property under the original design of the First Segment would be $22.4 million, while use of the 20-acre tract would result in a gift to defendants of land valued by plaintiff at $600,-

000. Defendants rejected this offer. One of the grounds urged for the injunction below was that the defendant Highway Commission acted arbitrarily and capriciously in refusing plaintiff's offer. The district court found otherwise. No issue is raised in this appeal with respect to that finding.

2. As a result of this decision, the U.S. Department of Transportation and its Secretary, originally named as defendants, were dismissed.

upon as a federal project. The project went through the programming stage in accordance with 23 U.S.C. § 105 and regulations promulgated thereunder. Location hearings were conducted as required by federal law. In accordance with the Federal Highway Administration's Policy and Procedure Memorandum 20–8 of 1969, the Highway Commission published a notice indicating that the Department of Transportation had approved the design plans for the First Segment. Between August, 1971, and February, 1975, defendants received $162,000 in federal money for purposes of completing preliminary engineering studies on the project.[3] The record shows that the preliminary engineering stage was virtually completed, and that the state was about to commence right of way acquisition with federal funds when the plaintiff instituted this action.

In 1973, the Highway Commission requested authority to proceed with land acquisition for the First Segment. When the federal authorities advised that an EIS was required, the Highway Commission advised the Department of Transportation that it intended to withdraw its application for federal funding of the First Segment. The Department of Transportation then informed the Highway Commission that all three remaining segments were, for EIS purposes, considered one project, and that, even though the state had withdrawn its application for federal funds as to the First Segment, an EIS would be required for all remaining segments of the by-pass. Indiana's compliance with this requirement and the Department of Transportation's actions

with respect thereto are less than exemplary. The State submitted a final EIS for approval to the Secretary of the Department of Transportation for the remaining two segments. The State then supplemented that EIS with an EIS as to the First Segment. Although the supplement was procedurally[4] and may have been substantively deficient, the Secretary approved the submission. When plaintiff questioned the adequacy of the EIS, the Secretary, in January, 1975, responded by withdrawing its approval of the EIS and requiring another single EIS to be prepared for all three remaining segments of the by-pass.

In early 1975, approximately 185 million dollars were made available to finance Indiana highway projects. All of these funds had to be committed to specific projects by July 1, 1975. By that date, Indiana had committed all of the federal funds to projects other than the by-pass, and shortly thereafter took steps to "de-program" the remaining two segments of the by-pass from federal funding consideration. The State indicated on brief and during oral argument that the federal monies previously received for preliminary engineering study were "refunded" to the federal government. We note that the net amount of funds received by Indiana was not reduced by the "refund". In fact, the record indicates that Indiana made an accounting transfer of the money, apply the amounts received for the by-pass to other projects.[5]

The district court concluded that since the Highway Commission had failed to obtain an EIS at the location stage as required by 23 CFR § 771.5(b),[6] its eligibility

---

**3.** On oral argument, counsel for plaintiff indicated that the total amount spent was $265,-000.00. Counsel for defendants asserted a figure of $162,000. The district court found that $162,000.00 had been received by defendants. Our review of the record supports the finding of the district court.

**4.** The EIS as to the First Segment was never circulated to the public for comment as required by 42 U.S.C. § 4332(C) and 23 CFR § 771.12(c).

**5.** Such accounting transfer of federal funds from one state project to another under the

guise of "refund" have been viewed with disfavor. See: *Ely v. Velde*, 497 F.2d 252 (4th Cir. 1974); *Named Ind. Mem. of San Antonio Con. Soc. v. Texas Highway Dept.*, 446 F.2d 1013 (5th Cir. 1971).

**6.** 23 CFR § 771.5(b) provides: "In the development of the highway section, . . . the EIS . . . shall be completed during the location stage, prior to the selection of a particular location; except for those highway sections to which this part applies that had received location approval prior to the effective date of this part." Although location approval of the by-pass preceded the effective date of this regula-

for federal funding was foreclosed—a course of action reserved to each state by right under 23 U.S.C. § 145. That statute provides:

> The authorization of the appropriation of Federal funds or their availability for expenditure under this chapter shall in no way infringe on the sovereign rights of the State to determine which projects shall be federally financed. The provisions of this chapter provide for a federally assisted State program.

■ We do not view 23 U.S.C. § 145 as granting to a state the prerogative to avoid compliance with NEPA. Rather, in view of the cogent policy statements of Congress with respect to environmental considerations as expressed in NEPA, we see § 145 as a general recognition by Congress of each state's sovereign right to choose which of its many transportation construction projects shall be programmed for Federal-Aid Highway Act (FHWA) assistance. As the last sentence of the quoted statute points out, FHWA provides for a federally assisted state program, and the fact that federal funds are authorized by Congress through appropriation or the fact that those funds are made available for expenditure does not infringe on the right of a state to select a project to be financed solely out of its own funds. Section 145, however, does not give the state the right to avoid the requirements of NEPA.

■ The legislative history of FHWA of 1973 is tortured, reflecting considerable

controversy in Congress on the issue of whether Highway Trust Fund Appropriations should be used for further construction of highways, or should be used to construct public transportation facilities. A compromise was reached in conference between both Houses. It appears to us that enactment of the FHWA of 1973, and specifically Section 123(a) thereof (23 U.S.C. § 145), was a reaffirmance by Congress of the cooperative federal-state character of projects programmed and undertaken pursuant to the Act [see: 119 *Cong.Rec.* 28099–28100 (1973) (remarks of Congressman Anderson)]. We do not interpret 23 U.S.C. § 145 as statutory authority whereby a state may take substantial steps over a period of years to program a project for federal assistance, and then withdraw the program from federal funding consideration with a resulting avoidance of complying with federal environmental statutes.

The point at which a state highway project becomes a major federal action for purposes of NEPA has been considered by other courts. Some courts have indicated that the EIS requirements of NEPA become applicable to a federally funded highway project at least at the stage of location approval. *Indiana Lookout Alliance v. Volpe*, 484 F.2d 11 (8th Cir. 1973); *Lathan v. Volpe*, 455 F.2d 1111 (9th Cir. 1971); *Morningside-Lenox Park Association v. Volpe*, 334 F.Supp. 132 (N.D.Ga.1971); *LaRaza Unida v. Volpe*, 337 F.Supp. 221 (N.D. Cal.1971); *aff'd.* 488 F.2d 559 (9th Cir. 1973).[7] In *Named Individual Members of*

---

tion, and thus the project apparently falls within the exception, we interpret the district court's finding to mean that since no EIS was completed as required, the project was not eligible for federal funds. The exception does not mean that no EIS is required if the project had progressed beyond the location stage prior to the effective date of the regulation. 40 CFR § 1500.13 requires the preparation of an EIS for major federal actions initiated prior to the effective date of NEPA (January 1, 1970). Furthermore, an EIS must be prepared for those highway projects for which Plans, Specifications, and Estimates Approval (P.S.&E. Approval) had not been given by the Secretary prior to January 1, 1970. *Monroe County Conservation Council, Inc. v. Volpe*, 472 F.2d 693, 699 (2 Cir. 1972). See also *San Antonio, supra*, 446 F.2d at 1025. In this case we are advised

· that Indiana's next step in seeking federal funding for the by-pass was to acquire P.S.&E. Approval from the Secretary.

7. Although the *LaRaza* cases, *supra*, held that a state highway project became a federal-aid project on the date it received location approval for purposes of the applicability of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. Sections 4622–4655, and did not consider the applicability of NEPA [see: *City of Highland Park v. Train*, 519 F.2d 681, 695 (7th Cir. 1975)], we nevertheless find the policy considerations underlying the application of the Relocation Act to a state highway project which seeks federal funding assistance to be similar to the policies underlying the application of NEPA to such projects.

the San Antonio Conservation Society v. Texas Highway Dept., 446 F.2d 1013, 1027 (5th Cir. 1971), the court found that a state highway project became a federal highway project when the Secretary of Transportation authorized federal participation in the project.

■ In determining that Indiana had properly withdrawn the by-pass project from federal funding such that the project no longer could be considered a "major federal action" requiring an EIS, the district court noted: "[Highway Commission's] decision not to comply with the eligibility procedures necessary to maintain [its] option to receive federal highway funds cannot have the paradoxical effect of producing federal involvement." In this regard, the district court found that federal participation in the by-pass project was limited to the initial programming stage. We think the district court erred in this finding. Our review of the record indicates federal participation in the programming, location, design, preliminary engineering, and right of way acquisition stages. Hence, we have no difficulty in concluding on the basis of the record before us that the entire by-pass project is a "major federal action" within the meaning of 42 U.S.C. § 4332(C) and that an EIS is required for the remaining three segments.

Inasmuch as the State of Indiana contends that under the circumstances of this case it may withdraw the project from federal funding participation, we are squarely faced with the troublesome question of whether by doing so at this late stage of the project, it is also relieved of its obligation to comply with NEPA. We are guided in this regard by the strong admonition of Congress contained in NEPA:

"The Congress authorizes and directs that, to the fullest extent possible . . the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in [NEPA]. . . ." 42 U.S.C. § 4332.

■ Given this expression of Congressional will, we are convinced that there is a point in the on-going federal-state relationship under Federal-Aid Highway Act programming at which the requirements of NEPA must be met. Under the facts and circumstances of this case, Indiana's seeking and receiving federal approval at various stages of the project and receiving preliminary financial benefits so imbued the highway project with a federal character that, notwithstanding the state's withdrawal of the project from federal funding consideration, compliance with federal environmental statutes was necessary. Were we to hold otherwise, we would give little, if any, effect to the Congressional directive so cogently expressed by the phrase "to the fullest extent possible."

In the instant case, the record shows federal involvement up to and including right of way acquisition. The precise point at which a federally programmed state highway project becomes irrevocably federal in character for NEPA purposes is a decision we deem unnecessary to make since, for purposes of this case, we find the by-pass project sufficiently federal in character to require compliance with NEPA. We do not consider Indiana's act of withdrawal a crucial fact in the determination of whether or not the provisions of NEPA are applicable to the project in this case. Rather, we look to the history of federal-state involvement to determine if the project is a "major federal action" requiring NEPA compliance.

The State of Indiana has urged that preliminary federal-state dealings and its compliance with applicable federal statutes and regulations only present a possibility of federal funding, and by complying with federal requirements and receiving federal approval at various stages, the state preserves its option to seek federal funds for a project. Further, Indiana contends that a project becomes irrevocably federal in nature at the time of P.S.&E. Approval. We reject these contentions. If Indiana had not long ago sought federal funding for the by-pass

project, had not programmed the project for federal assistance, sought and received federal approval of the location and design stages, received federal funds for preliminary engineering studies, and had not begun right-of-way acquisition, but rather had proceeded with these various phases of the project on its own, the result in this case might have been different. See *Citizens For Balanced Environ. & Transp., Inc. v. Volpe*, 376 F.Supp. 806 (D.Conn.1974), *aff'd per curiam*, 503 F.2d 601 (2nd Cir. 1974).

Plaintiff also contends that if we do not find NEPA applicable to this case, the district court erred in refusing to decide the issue of whether the defendants had complied with Indiana environmental laws. (Ind.Code 13–1–10–1 *et seq.*). In light of our decision above, we need not address ourselves to this issue.

Accordingly, the judgment of the district court is vacated and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.