**COLLEGE GARDENS CIVIC ASSOCIATION, INC., et al.**

v.

**U. S. DEPARTMENT OF TRANSPORTATION, et al.**

Civ. No. Y–80–2641.

United States District Court, D. Maryland.

Aug. 28, 1981.

Jerry R. Goldstein, Rockville, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen., Nolan H. Rogers, Louis J. Kozlakowski, Jr., Stephen M. LeGendre, and Louisa H. Goldstein, Asst. Attys. Gen., Baltimore, Md., for defendants State of Maryland, James J. O'Donnell and M. S. Caltrider.

Roger W. Titus, and Sondra Harans Block, Rockville, Md., for defendant Mayor and City Council of Rockville.

Paul A. McGuckian, Robert G. Tobin, and Alan M. Wright, Rockville, Md., for defendant Montgomery County, Maryland.

Edward M. Norton, Asst. U. S. Atty., Baltimore, Md., and Janice Siegel, U. S. Dept. of Justice, Land and Natural Resources Division, Washington, D. C., for defendants U. S. Dept. of Transp., Neil Goldschmitt, Federal Highway Administration and John S. Hassell, Jr.

## MEMORANDUM OPINION AND ORDER

### JOSEPH H. YOUNG, District Judge.

The plaintiffs, College Gardens Civic Association, Inc. and six additional homeowners and residents of the College Gardens subdivision of Rockville, Maryland, have filed this suit seeking broad declaratory and injunctive relief with regard to proposed roadway construction in and around the City of Rockville. The principal concern of the plaintiffs is with the proposed extension of Gude Drive along the northern border of College Gardens, but this suit extends further and challenges all construction related to an alleged "Rockville Circumferential Highway" project on the grounds that an environmental impact statement has not been prepared pursuant to the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.*, ["NEPA"], and no environmental assessment form or environmental effects report has been prepared pursuant to the Maryland Environmental Policy Act, Md.Code Annotated, Natural Resources §§ 1–301 *et seq.*, ["MEPA"]. The plaintiffs have filed a motion for a preliminary injunction and/or summary judgment seeking to prevent the defendants from taking any further actions with respect to the alleged "Rockville Circumferential Highway" until appropriate environmental impact statements have been prepared for the entire project.

Named as defendants in this case are: the U. S. Department of Transportation and its Secretary, and the Federal Highway Administration and its Administrator ["Federal defendants"]; the State of Maryland, the Secretary of the Maryland Department of Transportation and the Administrator of the Maryland State Highway Administra-

tion ["State defendants"]; Montgomery County, Maryland ["County defendant"]; and the Mayor and City Council of Rockville ["City defendants"]. The four groups of defendants have each filed separate cross motions for summary judgment raising various arguments and defenses in opposition to the plaintiffs. However, all defendants assert that no environmental impact statement is presently required under NEPA for the challenged roadway construction and that the projects should be allowed to continue, with judgment being entered in favor of all defendants.

After consideration of all the materials submitted by the parties, this Court has determined, for the reasons set forth below, that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. This opinion will constitute the Court's findings of fact and conclusions of law.

### FACTS

The road upon which this entire controversy centers is Gude Drive, a local road in Montgomery County which, if completed according to current proposals, would pass within 100 feet of the College Gardens subdivision of Rockville. Gude Drive presently spans from Route 28 on the east to Route 355 on the west. The segment of Gude Drive from Route 355 to Southlawn Lane is located in Montgomery County and was constructed by the County prior to any other portions of the Drive. Following completion of that segment, the City of Rockville constructed Gude Drive from Southlawn Lane to Route 28. The City and County have now proposed to jointly extend Gude Drive to the west from Route 355 to Research Boulevard, and it is this segment which has resulted in the present lawsuit.[1]

The plaintiffs have alleged that the proposed Gude Drive segment which would pass by College Gardens would form part of a proposed "Rockville Circumferential Highway" consisting of various roads and segments in and around the City of Rock-

---

1. *See* appended Exhibit I which shows location of streets referred to herein and their relation-

ship to general road pattern of City of Rockville.

ville. The northern portion of this circumferential highway system would consist of the entire length of Gude Drive, as described above. The southern portion of the system would be formed largely by Ritchie Parkway which, if completed, would run from Glen Mill Road on the west all the way to Route 355 on the east. Ritchie Parkway currently extends to Seven Locks Road on the east.

There is some uncertainty as to how the northern and southern portions would ultimately be connected on the western side because of doubt that the proposed relocation of Route 28 on the west will ever occur. If Route 28 is relocated, Gude Drive would probably be connected to Ritchie Parkway by the relocated Route 28 and Hurley Avenue, a local City street. However, the plans now call for Gude Drive to end at Research Boulevard on the west and the connection of Gude Drive to Ritchie Parkway on the western side would, therefore, require the use of at least three different roads, Research Boulevard, the present Route 28 and Hurley Avenue.

On the eastern side, Gude Drive and Ritchie Parkway would ultimately be connected by a segment of road that is variously referred to as First Street, Norbeck Road and Route 28.

All of the proposed road projects which would connect to form the alleged "Rockville Circumferential Highway," with one exception, are funded and have been planned by combinations of the City, County and State governments. No federal funds have been used in connection with any portion of Gude Drive, Ritchie Parkway or Research Boulevard and none have been requested. Furthermore, there have been no requests for federal approval of any crossings of the proposed roads over I–270.

The one exception to the lack of federal involvement is a project referred to as the First Street Extension Project, which will extend First Street from Route 586 to Route 355, a distance of less than 0.2 miles. This project was originally designated to be constructed without federal funds but, in the mid-1970s, the City sought and received financial assistance from the Federal Highway Administration ["FHA"] so that the project will be funded primarily by the federal government. The first two stages of this project, construction of the railroad bridge and acquisition of the right-of-way, have been completed but the final stage, construction of the road itself, is still in the design stage.

It is undisputed that no environmental impact statement has ever been prepared for any of the projects constituting the alleged "Rockville Circumferential Highway." [2] No environmental impact statement was prepared for the federally funded First Street Extension project because of a determination by the FHA that the project was a "non-major action" for which no environmental impact statement was required. With respect to the other segments, financed entirely without federal funds, the State, County, and City officials have not considered the requirements of NEPA applicable and, therefore, have proceeded without any attempt to fulfill the mandates of the federal environmental statute.

It is the lack of an environmental impact statement which forms the basis of the plaintiffs' asserted cause of action in this case. The plaintiffs contend that there is sufficient federal involvement to require an environmental impact statement with respect to the entire group of construction projects constituting the alleged "Rockville Circumferential Highway" and that no further action should be allowed with respect to such a system until an appropriate environmental impact statement has been prepared. Since the parties all agree that no environmental impact statement has ever been prepared for any portion of these projects, this case requires a determination

---

2. The City did commission the preparation of an environmental assessment for the construction of Gude Drive from Research Boulevard to Route 355 but there has been no contention that such an assessment would satisfy the requirements of NEPA, if that statute was found applicable.

of whether or not the provisions of NEPA require the preparation of such an environmental impact statement.

*JURISDICTION*

The plaintiffs have asserted that jurisdiction is vested in this Court under 28 U.S.C. §§ 1331 and 1361, the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, the Administrative Procedure Act, 5 U.S.C. §§ 702 and 703, and the principles of pendent jurisdiction.

█ There is little doubt about the jurisdiction of this Court over any roadway projects to which the provisions of NEPA are found applicable. The action of any defendant which would further a project that is subject to the provisions of federal law is a matter in controversy arising under the laws of the United States and federal jurisdiction over such action is essential to preserve federal question jurisdiction in the application of federal statutes. *Arlington Coalition on Transportation v. Volpe*, 458 F.2d 1323, 1329 (4th Cir.), *cert. denied, Fugate v. Arlington Coalition on Transportation*, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972).

█ With regard to the claims of the plaintiffs based upon state law, however, different considerations must be applied. While the Court undoubtedly could exercise pendent jurisdiction to determine the state law claims under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), such jurisdiction is discretionary in light of considerations of judicial economy, convenience, and fairness to litigants. 383 U.S. at 726, 86 S.Ct. at 1139. After consideration of all the various relevant factors, this Court has concluded that it should not assert pendent jurisdiction over the claims of the plaintiffs based upon state law.

If this Court decided to assert jurisdiction over the state law claims raised by the plaintiffs, it would be required to consider additional evidence with regard to the "proposed State action" under NEPA to make the initial determination of the applicability of a statute which plaintiffs admit is narrower than its federal counterpart. If the state statute was found applicable, determination of the merits of the claims would require the Court to consider independent questions of state law and policy, in an area in which there is relatively little state authority to which this Court could turn for guidance. On the other hand, refusal of pendent jurisdiction by this Court would not deny the plaintiffs a forum for their state law claims since under the Maryland Environmental Standing Act, Md.Code Annotated, Natural Resources §§ 1–501 through 1–508 (Supp.1980), the plaintiffs would have standing to bring the state law claims in the Circuit Court for Montgomery County, a forum which is more convenient to the parties and, presumably, more familiar with the state law issues. In light of all these considerations, this Court is persuaded not to exercise pendent jurisdiction over the state law claims and, therefore, will dismiss those parts of the present action.

*STANDING*

Both the City and the County defendants have raised questions regarding the standing of the plaintiffs to bring the present action. The City defendants devote nine lines of type to their assertion that the plaintiff Civic Association has no standing to bring this suit because it has not established how its members generally will be affected by the challenged actions. [Memorandum in opposition to plaintiffs' motion for summary judgment and in support of defendant Mayor and Council of Rockville's Cross-Motion for summary judgment, at page 9]. The County defendants assert that none of the plaintiffs have substantiated their allegations of environmental harm necessary to support their standing to bring suit under NEPA. [Memorandum in support of defendant, Montgomery County, Maryland's Motion for summary judgment and opposition to plaintiffs' motion for preliminary injunction and/or summary judgment at pages 8–10]. The positions of both these defendants on the issue of standing are devoid of merit.

█ An association seeking to bring an action in federal court may assert standing

on its own behalf or on behalf of its members. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). If the association asserts standing on behalf of its members, it must allege that such members will be affected in their activities or pastimes by the allegedly illegal acts. *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). The College Gardens Civic Association has clearly met the requirements for standing by its allegations with respect to the harm that would be suffered by its members as a result of the proposed extension of Gude Drive from Route 355 to Research Boulevard. The six named plaintiffs are all members of the Association who own homes near the proposed extension of Gude Drive. Moreover, the Association, by resolution, authorized the filing of this action in its name and many of its other members would undoubtedly be affected by roadway construction related to the proposed extension of Gude Drive and the Research Boulevard project. Furthermore, this Circuit has expressly affirmed the standing of a citizen's group alleging that its members were adversely affected by the actions of defendants in violation of NEPA. *Virginians for Dulles v. Volpe,* 541 F.2d 442, 444 (4th Cir. 1976) (association's members adversely affected in their use of the areas near National and Dulles airports by the FAA's alleged operation of those airports in violation of NEPA.)

The County defendants simply miss the point with their discussion of the alleged failure of the plaintiffs to substantiate in the record their assertions of environmental harm. It is true that for purposes of obtaining a preliminary injunction, the plaintiffs would be required to make some showing of "irreparable harm." *See, Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189 (4th Cir. 1977); *see also, West Virginia Highlands Conservancy v. Island Creek Coal Co.,* 441 F.2d 232 (4th Cir. 1971). However, standing to bring suit under NEPA is clearly satisfied where the plaintiffs allege injury in fact and are seeking to protect an interest protected by the statute in question. *United States v. SCRAP,* 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973); *Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *West Virginia Highlands Conservancy, supra,* at 234. The plaintiffs in this case have alleged both economic and environmental damage as a result of the proposed extension of Gude Drive and are seeking to protect the very interests contemplated by the provisions of NEPA. That the County defendants may disagree with the plaintiffs over the extent to which such harm would actually occur does not provide a basis for the denial of standing, where it is clear that the challenged actions would produce some identifiable effect upon the plaintiffs. The Supreme Court has rejected any attempt to limit standing to those who have been "significantly" affected by agency action and indicated that "an identifiable trifle" can suffice for standing. *United States v. SCRAP, supra,* 412 U.S. at 689 n.14, 93 S.Ct. at 2417 n.14. Thus, under the circumstances of the present case, all of the plaintiffs have satisfied the requirements for standing and this Court will not prevent them from maintaining this action.

*LACHES*

■ The City defendants also contend that the plaintiffs should be barred from bringing this suit by the equitable doctrine of laches. Specifically, the City argues that the unreasonable delay of the plaintiffs in asserting its position that all the roads are part of one federal highway "cries out for the application of the laches doctrine so as to prevent this case from going forward." [City defendants memorandum, supra, at p. 11]. This Court cannot agree.

In *Arlington Coalition on Transportation v. Volpe, supra,* the Fourth Circuit indicated that laches should not be invoked unless "the costs of altering or abandoning the proposed route would *certainly* outweigh the benefits that might accrue therefrom to the general public." 458 F.2d at 1329–30 (emphasis in original). In the present case, this Court is unable to find, on the basis of

the existing record, that the costs of altering or abandoning the proposed roadways at issue would *certainly* outweigh the benefits that might result from such action. Furthermore, there is no evidence that the plaintiffs deliberately or unconscionably delayed in bringing this action, where much of the construction has not even begun and the plaintiffs have been involved in various efforts to change the proposed roadways. In light of the public interest status accorded ecology preservation by the Congress, and the hesitancy of the Fourth Circuit to invoke laches in cases similar to the instant action, this Court will not rely upon that doctrine to avoid reaching the merits of the claims raised by the plaintiffs.

*NATIONAL ENVIRONMENTAL POLICY ACT OF 1969*

Section 102(2)(C) of NEPA requires that all federal agencies include a detailed statement of environmental consequences—known as an environmental impact statement—"in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). This statutory provision, while broad and far-reaching, does not itself impose a duty directly upon non-federal entities to perform or cease to perform any particular activity. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974). NEPA does not provide any basis for injunctive relief, regardless of the environmental effects of a proposed project, unless there is established "major Federal action" sufficient to implicate the requirements of that statute. As stated by the Fourth Circuit in affirming the denial of injunctive relief with respect to a North Carolina highway project:

"Despite the breadth of NEPA we think there are doubtless local projects that may be destructive of environmental assets that are not within the ambit and protection of the Act."

*Civic Improvement Committee v. Volpe*, 459 F.2d 957, 958 (4th Cir. 1972). Thus, whether NEPA requires an environmental impact statement for any or all of the roadways at issue will depend upon the facts of the case and the degree of federal involvement; only if there has been a "recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment," would NEPA require the preparation of an environmental impact statement. *Kleppe v. Sierra Club*, 427 U.S. 390, 398–99, 96 S.Ct. 2718, 2725, 49 L.Ed.2d 576 (1976).

The plaintiffs contend that the Gude Drive, Research Boulevard, Ritchie Parkway and First Street Extension construction proposals are all part of a single project for purposes of NEPA, and that an environmental impact statement should be required for the entire "Rockville Circumferential Highway" project. The defendants dispute that these roadways are all part of a single project and, instead, assert that the projects should each be considered individually for purposes of determining whether an environmental impact statement is required under NEPA.

In determining whether the various roadway projects should be treated as a single project for purposes of NEPA, it is necessary to consider a number of factors related to the nature of the proposed construction. After recognizing that "[t]here is no easily defined test" which can be applied in determining whether individual road segments should be viewed as a single project, the Court in *River v. Richmond Metropolitan Authority*, 359 F.Supp. 611 (E.D.Va.), *aff'd*, 481 F.2d 1280 (4th Cir. 1973), addressed the factors to be weighed in making such a determination:

"In order to determine, therefore, when a group of segments should be classified as a single project for purposes of federal law, a court must look to a multitude of factors, including the manner in which the roads were planned, their geographic locations, and the utility of each in the absence of the other."

359 F.Supp. at 635.

The Court in *River* was faced with a situation analogous to that present in the instant case. The plaintiffs were relying upon a two-pronged argument to support

their assertion that there was sufficient federal involvement to require an environmental impact statement for the Downtown Expressway in Richmond, Virginia, despite the acknowledged absence of any direct federal funding of that segment. First, the plaintiffs asserted that the preservation of the possibility of future federal funding was sufficient to invoke the requirements of NEPA. Second, the plaintiffs argued that the entire Richmond expressway system was an integrated, interdependent system and that the federal involvement in the original planning of the whole system and in one major highway was sufficient to make the entire system federal in nature. 359 F.Supp. at 632.

In granting summary judgment for the defendants, the Court in *River* rejected both arguments of the plaintiffs and refused to apply the requirements of NEPA to the segment at issue. With regard to the possibility of future funding, the Court found no evidence that the defendants had taken steps to preserve the option of such funding and was unwilling to apply NEPA simply on the basis of future possibilities. 359 F.Supp. at 634. The analysis with respect to the second argument raising the issue of integration was more complex. The Court began by noting the legal development and theory underlying this argument of the plaintiffs:

"The plaintiffs seek also to establish federal involvement in the Downtown Expressway by means of the 'project splitting' theory. This terminology stems from the use of the word 'project' in the highway acts' requirements that the Secretary of Transportation not approve for the allocation of funds any federal project which has not met all of the relevant statutory requirements. The project concept has been found useful by the courts considering highway cases and has been extended to define 'federal action' under NEPA in these cases. Simply stated, the theory holds that state and federal highway authorities may not avoid the requirements of federal law by splitting what is in essence a single, federal project into several segments and

funding certain of those segments with state funds only."

359 F.Supp. at 634 [footnotes omitted]. The Court then applied that concept to the facts of the case before it, holding that it could not conclude that I–195 and the Downtown Expressway constituted a single unified project. The Court admitted that the system was planned as a whole to meet the overall traffic needs of Richmond in the latter half of the twentieth century and that each component of the system was designed with the other components in mind, so that maximum efficiency could be derived from each road. However, the Court was also convinced that each individual segment served rational needs in their own rights, apart from traffic feeding one another, and therefore could properly be viewed as independent projects.

A similar result was reached by the Court in *Movement Against Destruction v. Volpe*, 361 F.Supp. 1360 (D.Md.1973), aff'd, 500 F.2d 29 (4th Cir. 1974), where the plaintiffs contended that the interstate highways for the City of Baltimore, referred to as the "3–A system," should have been treated as a single project so as to require an environmental impact statement for the entire scheme. The Court admitted the possibility that such treatment might be appropriate in certain instances:

"In some situations the relationship of several roads or parts of road may be so interrelated that no one road or part of road can function as an efficient carrier of motor vehicles except in conjunction with the other. In such a case, it is possible that it would be necessary to have an EIS [environmental impact statement] which would have as its subject all of the roads or parts of roads which could only function efficiently as a unit. In such an unusual situation, the several roads would not constitute a system of highways but would be treated essentially as a single highway for purposes of the EIS."

361 F.Supp. at 1384. However, the Court held that the interstate system in Baltimore did not present such a situation. Although

the roads were planned together and complemented each other, each interstate and primary route in the system was proposed to serve a different function in the movement of interstate and local vehicular traffic. Since the components of the "3–A system" were not necessarily so interdependent as to require the construction of all of the 3–A system or none of it, the Court held that an environmental impact statement on the system as a whole was not required. 361 F.Supp. at 1384–85.

█ Application of the considerations discussed above leads this Court to conclude that the various roadway projects in and around the City of Rockville should not be treated as a single project for purposes of NEPA. The plaintiffs in this case rely heavily upon the use of the word "circumferential" by local officials in many of the past references to the roadway system in and around Rockville. It cannot seriously be disputed that, for at least the last ten years, local officials have made repeated references to the construction of a "circumferential" system which would assist in the flow of vehicular transportation around the City of Rockville. However, this discussion and planning has not taken place in the context of developing a single roadway project to encircle the City but rather in the sense that all roads in a municipal road system should be interrelated for the purpose of providing for the orderly flow of traffic in, through, and around the City.

The roads which allegedly form the "Rockville Circumferential Highway" project have not been planned as if they were all part and parcel of the same single project. Gude Drive has been developed in three separate stages, the first part having been planned and constructed by the County, and the second segment by the City. The third segment, which is the focus of this case and has not yet been constructed, is a joint effort between the City and the County and, as is the case with all of Gude Drive, was planned without the assistance of the federal government. Ritchie Parkway and Research Boulevard were also planned and constructed in stages, with no financial assistance from the federal government.

The only project to receive federal funding, the First Street Extension project, was originally planned to be developed and constructed by the State and City without the benefit of federal assistance. However, when the State did not proceed as quickly as desired by the City, the City officials sought aid from the FHA under the "Traffic Operations Program To Increase Capacity and Safety" ["TOPICS"]. The First Street Extension project received approval for federal funding originally under the TOPICS program and later under the Federal Aid Urban System program. Because of various problems, the First Street Extension project, which in its entirety extends less than one-fifth of a mile, was divided into three stages. The first two stages, the construction of a bridge to carry B & O railroad tracks over the road and acquisition of right of way, have been completed. The final stage, construction of the road itself, will not begin until the completion of METRO construction by the Washington Area Metropolitan Transit Authority. However, when completed, the First Street Extension project will represent the culmination of separate and distinct planning and development that clearly indicates this project should be considered independently of the other roadway projects at issue in this case.

The geographic location of the proposed roadway projects also fails to support the assertion that they should be considered as parts of a "circumferential system" with no independent utility of their own. It is true that the proposed Gude Drive, Research Boulevard, Ritchie Parkway and First Street Extension projects could all be connected, with the help of a few other streets, so as to encircle a large part of Rockville, including most of the downtown area. However, an examination of this route negates any inference that it would constitute a "circumferential highway." None of the roads involved are limited access roads and none have posted speed limits in excess of 40 miles per hour. There are numerous intersecting roads and driveways along the

route, many of which are controlled by stop lights and other traffic control devices. An individual following the route suggested by the plaintiffs for circumnavigating the City would pass through several residential communities and would have to make at least four turns to travel from the west end of Gude Drive onto Ritchie Parkway. While these various road segments could be connected to form a circuitous route around part of the City, their geographic locations belie the assertion that they should be considered as parts of one roadway project.

The most significant factor weighing against the treatment of these various road segments as a single project is the independent utility of each segment. This Court notes, as did the Court in *River, supra*, at 635, that "it does not sit as a traffic expert to determine when one [road] will be efficient if the other is not built." However, an examination of the facts of this case reveals that while all of the roads at issue are interrelated in the sense of contributing to a municipal transportation system, each road also has independent justifications for its existence.

The Gude Drive and Research Boulevard construction projects will serve to provide greater access to the proposed industrial development north of College Gardens and to the development already existing along the I-270 corridor. In addition, these roadways should help to ease the traffic burden on Route 355 north of Gude Drive, Fields Road, Shady Grove Road and Route 28. Gude Drive was also originally planned to provide access to the residential communities to the south, including College Gardens, but the planned intersection with Yale Place was deleted after community opposition. Ritchie Parkway currently serves as the primary access into and out of the residential areas in the southwestern portion of Rockville and, when completed, should ease the traffic burden on the east-west streets in downtown Rockville, as well as on Montrose Road.

The only segment receiving any federal financial assistance, the First Street Extension project, clearly has utility separate and apart from the other roadway projects. The First Street Extension project received federal funding for the primary purpose of alleviating local traffic congestion and accidents in the vicinity of Viers Mill Road and Route 355. That intersection, in downtown Rockville, had been a problem area for some time and the additional traffic expected from the construction of a WMATA METRO station nearby would only exacerbate the existing congestion. The First Street Extension project will serve to increase the overall traffic capacity in that area and ease the burden on the Viers Mill Road—Route 355 intersection, thereby accomplishing an independent function which is separate and distinct from any connection this 0.2 mile segment may have with connecting a circumferential roadway around the City of Rockville.

The independent utility of these roadway projects, when coupled with their geographic locations and the manner in which the roads were planned, leads this Court to conclude that they are not part of any proposed "Rockville Circumferential Highway" project and should be considered separately for purposes of NEPA. Like the roads at issue in *Movement Against Destruction, supra*, the various roadway segments in and around Rockville are not so interdependent as to require the construction of all of them or none of them. Each proposed roadway project possesses independent utility which justifies its construction, even in the absence of the others. Moreover, there is no evidence that any of the Rockville roadway projects have been "carved out" of larger federal projects solely for the purpose of avoiding the application of federal regulations.

The facts of the instant case are clearly distinguishable from those in previous cases relied upon by the plaintiffs, where Courts have rejected attempts to "carve up" roadway projects so as to avoid or defeat federal regulations. For example, in *Thompson v. Fugate*, 347 F.Supp. 120 (E.D.Va.1972), the defendants had attempted to carve an 8.3 mile segment of Route 288 out of a 75 mile circumferential beltway around the City of

Richmond in an attempt to avoid the application of various federal statutes to that one segment. There was significant federal involvement in the approximately 67 other miles of the system, which included 21 miles of that same Route 288. The Court, recognizing this obvious attempt to circumvent Congressional policy, held that, at the very least, the 8.3 segment must be considered along with the other 21 miles of the same route. 347 F.Supp. at 124.

Similarly, in *Scottsdale Mall v. State of Indiana,* 549 F.2d 484 (7th Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978), the State had attempted to avoid the requirements of NEPA by withdrawing from consideration for federal funding a 3.8 mile segment of a planned 28 mile long bypass around the South Bend-Elkhart metropolitan area in Northern Indiana. On appeal, the 7th Circuit rejected such an attempt and held that federal participation in the programing, location, design, preliminary engineering, and right-of-way acquisition stages, required the conclusion that the entire highway bypass project was a "major federal action" within NEPA for which an environmental impact statement would be required. Because the State had sought and received federal approval at various stages of the project, received preliminary financial benefits, and enjoyed the fruits of federal involvement up to and including the right-of-way acquisition, the Court held that the highway project was so imbued with a federal character that, notwithstanding the withdrawal of the segment from consideration for federal funding, compliance with the federal environmental statutes was required. 549 F.2d at 489–90.

In situations where a large roadway project has been divided into segments, some state and some federal, solely for the purpose of avoiding federal regulations, it is undoubtedly appropriate—and necessary—for the courts to reject such a fiction and apply federal law to the entire project. However, the circumstances of the present case do not provide such a situation. Each of the various roadway projects in and around Rockville was planned as a separate and distinct project with independent utility. With one exception, there has been no federal involvement in the planning, development or financing of any of these roadway projects, least of all in the context of a "Rockville Circumferential Highway" project. Thus, this Court is unable to find that the roadway projects at issue in this case constitute a "Rockville Circumferential Highway" for purposes of NEPA.

If the various projects are considered independently of each other for purposes of NEPA, as this Court finds they must be, the federal funding for the 0.2 mile First Street Extension project clearly does not provide any basis for applying the provisions of NEPA to any of the other projects, regardless of whether an environmental impact statement should have been prepared for that federally financed project. The plaintiffs have asserted that the First Street Extension project was improperly classified as a "non-major" action and that the First Street Extension, by itself, constitutes a major federal action for which an environmental impact statement must be prepared. Because this Court has found that the various roadway projects must be considered independently of each other, it is unnecessary to determine at this time if an environmental impact statement is required for the First Street Extension project. The plaintiffs can allege harm only with regard to the Gude Drive—Research Boulevard projects and, in the absence of any legal connection with the First Street Extension project, the plaintiffs lack standing to challenge that 0.2 mile project located halfway across the City.

 The only remaining argument of the plaintiffs in support of their contention that an environmental impact statement must be prepared for the extension of Gude Drive is based upon the federal approval required to cross over I–270. The plaintiffs assert that Gude Drive cannot be allowed to cross I–270 without prior federal approval and that such a requirement renders the Gude Drive project a "major Federal action which may significantly affect the quality

of the human environment" for which an environmental impact statement is required. The City defendants contend that the "approval" at issue is not required by any statute, rule or law but is merely the policy of the FHA to review plans for the crossing of any federally funded highway in order to insure the structural stability of the crossing. The City defendants further assert that even if the FHA were to decide to attempt to prevent the Gude Drive extension from crossing over I–270, such a decision would not affect the remainder of the project which has independent utility and would probably be constructed regardless of the federal action on the I–270 crossing. The Federal defendants agree with the plaintiffs that any crossing of I–270 must be approved by the FHA but assert that there is nothing concerning the Gude Drive extension before the FHA at this time, and that until the issue of such approval is before the FHA, an order requiring an environmental impact statement would be contrary to law.

After consideration of all the circumstances and arguments surrounding this issue, the Court finds no basis for requiring an environmental impact statement for the Gude Drive extension at the present time. The Supreme Court has clearly indicated that the moment at which an environmental impact statement must be ready "is the time at which [the agency] makes a recommendation or report on a *proposal* for federal action." *Kleppe v. Sierra Club, supra,* 427 U.S. at 407, 96 S.Ct. at 2729, *quoting Aberdeen & Rockfish R. Co. v. SCRAP,* 422 U.S. 289, 320, 95 S.Ct. 2336, 2356, 45 L.Ed.2d 191 (1975) (emphasis in original). In the present case, there has not yet been any request for federal approval of a crossing of

I–270 by Gude Drive nor is there any evidence that the FHA has in any way planned such a crossing.[3] The instant situation is thus quite different from *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1977), where the federal highway officials had approved the proposed location of an interstate freeway and had authorized acquisition of property for right-of-way, yet refused to prepare an environmental impact statement on the grounds that final federal approval of design or construction plans had not yet been given. 455 F.2d at 1120–21. In the present case, there has been no federal participation in the planning or development of the Gude Drive extension nor has there been a sufficient showing of future federal involvement so as to implicate the requirements of NEPA.

The circumstances of the Gude Drive extension make it quite likely that the approval of a crossing of I–270 will be presented to the FHA at some point in the future. At that time, it will be necessary for the FHA to address its responsibilities under NEPA and the applicable federal regulations. This Court takes no position on whether federal approval will ultimately be required for a crossing of I–270 or, if so, whether such approval would constitute major federal action sufficient to require the preparation of an environmental impact statement. Quite possibly, an environmental impact statement might be required before Gude Drive could be allowed to cross over the federal interstate highway, particularly if federal assistance is ever sought for such a project. However, at the present time, there is simply no basis for applying the requirements of the federal environmental statute to a proposed roadway extension

---

**3.** By letter of March 20, 1980, the State Highway Administration did request the FHA to review a maintenance of traffic schematic plan for a tunnel under I–270 which the City of Rockville was considering. The letter did not seek any approval for a crossing of I–270 but merely sought comments on a traffic-control plan should I–270 traffic have to be routed around any future such construction. The FHA took no action beyond stating that more

details would be required for a traffic-control plan and indicating a willingness to discuss such details, if desired. Affidavit of Emil Elinsky, FHA Division Administrator for the State of Maryland, March 13, 1981, and attachments. This Court is satisfied that this informal request for advice on the issue of temporary traffic control cannot be interpreted as a request for approval of a crossing of I–270, sufficient to implicate the requirements of NEPA.

with which there has been no federal involvement.

Accordingly, it is this 28th day of August, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion of plaintiffs for a preliminary injunction and/or summary judgment be, and the same is, hereby DENIED;

2. That the claims of plaintiffs relying upon the law of the State of Maryland be, and the same are, hereby DISMISSED for lack of jurisdiction;

3. That the cross motions for summary judgment on behalf of all defendants be, and the same are, hereby GRANTED; and

4. That a copy of this Memorandum Opinion and Order be sent to counsel for all parties.