F I L E D
United States Court of Appeals
Tenth Circuit

NOV 17 1998

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THOMASINE ROSS; STANLEY ROSS;
ANJANETTE BITSIE; PAMINA
YELLOWBIRD; JASON DANIELS; and
WETLANDS PRESERVATION
ORGANIZATION and KANSAS
UNIVERSITY ENVIRONS, Kansas
unincorporated associations,

      Plaintiffs-Appellees,

v.

FEDERAL HIGHWAY
ADMINISTRATION; DAVID GEIGER,
in his official capacity as Division
Adminstrator, Federal Highway
Administration; MARK BUHLER, TOM
TAUL, DEAN NIEDER, in their official
capacities as County Commissioners of
Douglas County, Kansas; and E. DEAN
CARLSON, in his official capacity as
Kansas Secretary of Transportation.

      Defendants-Appellants.

Nos. 97-3240, 97-3278

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 97-CV-2132)
(972 F.Supp. 552)

Bruce M. Plenk, (Robert V. Eye, of Irigonegaray & Associates, Topeka, Kansas, with him
on the brief), Lawrence, Kansas, for Plaintiffs-Appellees.

Tamara N. Roundtree, (John A. Bryson, U.S. Department of Justice; and Diane K. Mobley, U.S. Department of Transportation, Federal Highway Administration, Office of the Chief Counsel, Washington, D.C., with her on the briefs), U.S. Department of Justice, Washington, D.C., for Defendants-Appellants Federal Highway Commission and David Geiger.

Michael J. Davis, (Patricia A. Konopka, of Stinson, Mag & Fizzell, P.C., Kansas City, Missouri; and Michael B. Rees, Office of Chief Counsel, Kansas Department of Transportation, Topeka, Kansas, with him on the brief), of Stinson, Mag & Fizzell, P.C., Kansas City, Missouri, for Defendants-Appellants Kansas Department of Transportation and Douglas County, Kansas.

---

Before **BALDOCK**, **McKAY**, and **HENRY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Defendants appeal the district court's grant of a permanent injunction enjoining further action on a segment of the South Lawrence trafficway in Douglas County, Kansas, pending the completion of a supplemental environmental impact statement (hereafter "SEIS") and entry of a new record of decision by the Federal Highway Administration (hereafter "FHWA"). Defendants argue that the district court erred in concluding (1) that the eastern segment of the trafficway, which runs along 31st Street in Lawrence, Kansas, was a "major federal action" subject to the requirements of the National Environmental Policy Act (hereafter "NEPA"); and (2) that § 145 of the Federal-Aid Highway Act (hereafter "FAHA") does not apply to demonstration projects. In the alternative, Defendants argue that if the project was properly deemed a major federal action, the district court erred in ordering an SEIS without allowing the agency to determine whether

2

NEPA in fact required such action. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

The development of a southern bypass around Lawrence, Kansas has taken a long and winding path. Although the idea for a southern bypass around Lawrence has been under consideration for more than thirty years, the FHWA became involved in the South Lawrence Trafficway project in 1986. At that time, local, state and federal officials began planning the trafficway as a jointly funded federal-aid highway project. Under the Federal-Aid Highway Act, states may seek reimbursement for a percentage of the costs incurred for highway projects. 23 U.S.C. § 101 et. seq. States seeking federal highway funds must submit to FHWA a list of proposed transportation projects. 23 U.S.C. § 105. Upon final approval of the project and compliance with applicable federal laws and regulations, including NEPA, FHWA reimburses the state for a portion of the project's cost. See 23 U.S.C. § 120; 23 C.F.R. § 1.36; 42 U.S.C. § 4332(2)(C). Thus, in order to be eligible for federal funding, the state needed to prepare an environmental impact statement (hereafter "EIS").

On June 23, 1986, the FHWA published in the Federal Register a Notice of Intent to Prepare an EIS for the trafficway. The notice stated that the project "runs east-west near 31st Street in South Lawrence from K-10 to the Clinton Dam and north-south from Clinton Dam to the Kansas Turnpike." After public comment, FHWA approved and

3

released to the public a final EIS for the entire South Lawrence trafficway. The next day, the FHWA issued a Record of Decision, selecting a route for the trafficway, which included the eastern leg along 31st Street. In April 1993, the United States Army Corps of Engineers issued a permit pursuant to the Clean Water Act for the 31st Street route, allowing state and county authorities to discharge dredge or fill material into wetlands. See 33 U.S.C. § 1344(a).

Congress appropriated $7.2 million in federal funding for the trafficway on April 2, 1987, and designated the trafficway as a demonstration project.[1] Surface Transportation and Uniform Relocation Assistance Act of 1987 ("STURRA"), Pub. L. No. 100-17, § 149(a)(72), 101 Stat. 132, 192 (1987). On December 22, 1987, Congress amended § 149(a)(72) of STURRA to expand the trafficway to:

> approximately 14 miles in length, which, at its western terminus, will provide access from an east-west Interstate highway [I-70] route to a reservoir and a university research park, will proceed easterly around the southern portion of the City of Lawrence and, at its eastern terminus, will provide access to a business park and a limited access east-west State highway [Kansas Highway 10].

Department of Transportation and Related Agencies Appropriations Act of 1988, Pub. L. No. 100-202, § 345, 101 Stat. 1329 (1987). In 1991, Congress appropriated an additional $3.3 million for the years 1992 through 1997 for the trafficway. Intermodal Surface

---

[1] Demonstration projects, specially earmarked by Congress, are designed to demonstrate novel road-building techniques. Cf. Mike Mills, House Travels Favorite Road to Funding Local Projects, 49 Cong.Q. 1884, 1885 (July 13, 1991).

Transportation Efficiency Act of 1991 (ISTEA), Pub. L. No. 102-240, § 1106(a)(2), 105 Stat. 1914, 2041 (1991). Of these funds, $108,000 have been expended on the eastern leg of the trafficway for wetlands mitigation.[2] The remainder of the $10.4 million in federal funds authorized for the South Lawrence trafficway have been spent on the western portions.

In July and October 1993, representatives of Haskell Indian Nation University expressed concerns that the 31st Street route adjacent to the campus would impact its property, cultural traditions, and spiritual sites. When the Haskell Board of Regents passed a resolution opposing construction of the trafficway along 31st Street, Douglas County, the Kansas Department of Transportation (hereafter "KDOT"), and FHWA suspended work along the 31st Street portion of the trafficway. FHWA, KDOT and Douglas County later determined that because the original EIS did not consider the University's concerns, an SEIS was necessary. Accordingly, on October 17, 1994, FHWA published a Notice of Intent to Prepare an SEIS.

In April 1994, after Haskell University raised its concerns about the 31st Street leg of the project, KDOT requested that FHWA allow the trafficway to be segmented in order to facilitate construction and funding limits.[3] In May 1994, FHWA approved

---

[2] Mitigation of 11.89 acres of wetlands that the 31st Street alignment would impact was completed with a net gain of 3.41 acres of wetlands

[3] Generally, segmentation of highway projects is improper for the purpose of preparing environmental documentation. See Village of Los Ranchos De Albuquerque v.

(continued...)

5

KDOT's request to segment the trafficway, with three segments on the western leg (Kansas Turnpike south to U.S. 40, U.S. 40 south to Clinton Parkway, and Clinton Parkway south and west to U.S. 59) and one segment on the eastern leg (east of U.S. 59 to 31st Street east to K-10). The three segments on the western leg have since been completed and are in use.

On October 2, 1995, FHWA, KDOT and Douglas County released a draft SEIS addressing the 31st Street portion of the trafficway for public comment. On November 8, 1995, Douglas County, FHWA and KDOT held a public hearing on the draft SEIS. After the hearing, the SEIS process stalled because FHWA, KDOT and Douglas County were unable to reach an agreement on the alignment of the eastern leg. On December 9, 1996, Douglas County sent a letter to FHWA, notifying the agency that the county intended to proceed with the original 31st Street route for the eastern leg of the trafficway, and asking FHWA to "give their position in writing and recommend a method to conclude the SEIS process." The letter expressed the county's frustration with the SEIS process stating that "[t]he Douglas County Board of County Commissioners is

---

[3](...continued)
Barnhart, 906 F.2d 1477, 1483 (10th Cir. 1990). A project may be properly segmented, however, if the segments (1) have logical termini; (2) have substantial independent utility; (3) do not foreclose the opportunity to consider alternatives; and (4) do not irretrievably commit federal funds for closely related projects. Id. After determining that the South Lawrence trafficway met these requirements, FHWA approved segmentation. The parties do not challenge the segmentation of the trafficway. Therefore, we do not have before us the issue of whether FHWA properly approved segmentation in this case.

frankly disappointed that the efforts of the last three years have not produced an acceptable alternative to 31st Street . . . . The SEIS process is deadlocked. FHWA has yet to take a stand in writing on any of the three alignments . . . . We await your advice and position but must clearly proceed to complete the project the County voters approved over six years ago."

Two months later, in February 1997, KDOT, in hopes of completing the project, forwarded to FHWA an agreement between KDOT and Douglas County to construct the eastern leg of the trafficway as a nonfederal project, without the use of federal-aid highway funds. KDOT stated that the agreement should "resolve the question of any further involvement by the FHWA [in this project]." On February 21, 1997, FHWA responded by letter, acquiescing to KDOT's decision to treat the eastern portion of the trafficway as a local project. In the letter to Douglas County, Defendant David R. Geiger, FHWA division administrator, stated that the FHWA "will no longer be the lead Federal agency for this project. In accordance with 23 U.S.C. § 145, it is the State's decision on which highway projects they will use their limited Federal-aid highway funds . . . ." On March 6, 1997, FHWA published a notice in the Federal Register withdrawing the Notice of Intent to complete an SEIS.

On March 12, 1997, Plaintiffs filed their complaint seeking to enjoin further action on the project. On March 15, 1997, the district court granted a preliminary injunction. Following a hearing on May 2, 1997, the district court issued a permanent injunction

7

preventing FHWA, KDOT and Douglas County from taking further action on the eastern leg of the trafficway pending completion of the SEIS process, issuance of a final SEIS and entry of a new Record of Decision.  Applying the arbitrary and capricious standard of review set forth in § 706(2)(A) of the Administrative Procedure Act (hereafter "APA"), the district court concluded that Defendants violated NEPA by not completing the SEIS.

II.

A.

Plaintiffs argue that FHWA improperly discontinued the SEIS process and withdrew from the eastern leg of the South Lawrence trafficway.   We review an agency decision regarding the need for an SEIS under the arbitrary and capricious standard of the APA, 5 U.S.C. § 706(2)(A).  See Holy Cross Wilderness Fund v. Madigan, 960 F.2d 1515, 1524 (10th Cir. 1992).  The scope of review under this standard is narrow, id., and we may not substitute our judgment for that of the agency.  Hoyl v. Babbitt, 129 F.3d 1377, 1383 (10th Cir. 1997).

Under the APA, we may set aside the agency's decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706(2)(A).   We must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment.  Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1574 (10th Cir. 1994).  Agency action will be set aside if:

> the agency has relied on factors which Congress has not
> intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co., 463 U.S. 29, 43 (1983).

Moreover, if agency action was "unlawfully withheld or unreasonably delayed," we must compel the agency to take appropriate action. 5 U.S.C. § 706(1); see also Mt. Emmons Mining Co. v. Babbitt, 117 F.3d 1167, 1170 (10th Cir. 1997). In conducting our review of the agency decision, we accord no deference to the district court's decision. Id.

B.

Congress enacted NEPA to promote environmental quality. See 42 U.S.C. § 4331(a)-(c). As a means of doing so, NEPA establishes procedures agencies must follow, such as preparing an EIS or SEIS. Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 448 (10th Cir. 1996). These procedures ensure that the agency will take a "hard look" at the effect of its actions. Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21 (1976). NEPA does not mandate a particular outcome, only a specific process that the agency must follow. Rio Hondo, 102 F.3d at 448. Compliance with NEPA is required, however, only if the federal government's involvement in a project constitutes "major federal action." Los Ranchos, 906 F.2d at 1480; 42 U.S.C. § 4332(2)(C). Thus, in order to determine whether FHWA acted arbitrarily and capriciously by discontinuing the SEIS process and withdrawing from the completion of the trafficway, we must first decide whether the trafficway constitutes a major federal action.

9

We have defined "major federal action" as "actions by the federal government . . . and nonfederal actions 'with effects that may be major and which are potentially subject to Federal control and responsibility.'" Los Ranchos, 906 F.2d at 1482 (quoting Sierra Club v. Hodel, 848 F.2d 1068, 1089 (10th Cir. 1988)). In effect, "major federal action" means that the federal government has "actual power" to control the project. Id.

Defendants argue that the district court erred in concluding that the entire trafficway, including the eastern leg, remained a "major federal action" after the state decided not to seek any additional federal funds to construct the eastern leg of the trafficway. Defendants ask us to consider only the eastern segment of the trafficway in determining whether a "major federal action" exists. Defendants argue that because the state will not use federal funds to complete the eastern segment, the segment is not a "major federal action" under Los Ranchos and therefore NEPA does not apply.

Defendants' argument overemphasizes the segmentation of the trafficway. Defendants assume that once a federal-aid highway project is segmented it may be defederalized, regardless of how far the project has advanced. Segmentation does not, however, necessarily convert a trafficway into federal and nonfederal segments. In this case, Kansas' argument for "defederalization" of the eastern leg is based, not on segmentation, but instead on the state's withdrawal, more than two years after segmentation, from federal funding for the eastern segment. Likewise, FHWA's articulated reason for withdrawing from the project after state and county officials

10

decided not to use federal funds, was Kansas' right under 23 U.S.C. § 145[4] to determine which highway projects will be federally financed. Therefore, the relevant inquiry on appeal is whether § 145 authorized state and local officials, with FHWA approval, to "defederalize" a segment of a "major federal action" by foregoing federal funding in order to avoid compliance with NEPA. On the unique facts of this case, the answer is no.

The South Lawrence Trafficway envisioned and planned by FHWA, KDOT and Douglas County was clearly a "major federal action." Congress appropriated approximately $10.4 million for the entire fourteen-mile trafficway. See Los Ranchos, 906 F.2d at 1480 (noting that courts have found highways major federal actions where federal funds have been approved or are immediately sought). In this case, the manner in which the project was funded strengthens the federal government's "actual power to control" this project. See id. at 1482. In the appropriations bill, Congress specifically designated the trafficway as a demonstration project. See STURRA, Pub. L. No. 100-17, § 149(a)(72), 101 Stat. 132, 192 (1987). Funding for demonstration projects differs from normal federal-aid highway projects in that the demonstration funds may only be spent on the specified project. See Mike Mills, Where the Money Goes, 49 Cong.Q. 127, 128 (Dec. 7, 1991). Indeed, states prefer "normal" highway funding which allows them to

---

[4] Title 23 U.S.C. § 145 provides that "[t]he authorization of the appropriation of Federal funds or their availability for expenditure under this chapter shall in no way infringe on the sovereign rights of the States to determine which projects shall be federally financed."

11

prioritize projects, instead of demonstration funding which specifies the particular project on which the money must be spent. Id. Congress' decision to select the trafficway as a demonstration project shows a high degree of federal involvement in this case. In addition, KDOT and Douglas County sought federal approval at each stage of the project and spent more than $10 million in federal funds on the project, including $108,000 on the eastern segment. Therefore, the district court did not err in concluding that the entire trafficway is a "major federal action" within the meaning of 42 U.S.C. § 4332(2)(C).

The question now becomes whether Kansas and Douglas County can withdraw a segment of the trafficway from federal funding and, as a result, discontinue the segment's status as a "major federal action," circumventing the SEIS process already begun. This question has not been directly addressed by our circuit. The Fifth and Seventh circuits, however, have concluded that states may not avoid NEPA's requirements by withdrawing a segment of a project from federal funding. San Antonio Conservation Society v. Texas Highway Dept., 446 F.2d 1013, 1027 (1971) (state cannot circumvent federal laws by constructing segment of federal highway project with state funding); Scottsdale Mall v. State of Indiana, 549 F.2d 484, 489 (7th Cir. 1977) (withdrawal of federal funding from a segment of a "major federal action" does not relieve state of NEPA compliance).

The facts of this case are very similar to Scottsdale Mall. In that case, the Indiana State Highway Commission (hereafter "ISHC") withdrew a highway project from federal-aid highway funding and sought to proceed solely with state funds in the final stages of

12

the project.  Id. at 485.  By doing so, the state sought to avoid NEPA compliance.  Id. The court determined that withdrawal from federal funding in the project's final stages did not relieve the state of its obligation to comply with federal environmental laws.  Id. at 489.

The project at issue in Scottsdale Mall was a 28-mile bypass around the South Bend-Elkhart area in Indiana.  Id. at 486.  The by-pass, under consideration for twenty years, was planned as a federal project in four segments.  Id.  At the time of the lawsuit, the state of Indiana had completed one segment, spending $6.7 million in federal funds. Id.  One of the uncompleted segments was set to bisect the plaintiff's property, a shopping mall in South Bend, Indiana.  Id.  The plaintiff brought suit, arguing that the state had not complied with NEPA.  Id. at 485.  The state then decided to build the segment without further federal assistance.  Id. at 486.  This, the state apparently argued, relieved it of its duty to comply with NEPA.  Looking to  the history of federal-state involvement in the project, the court concluded that the highway project "was so imbued" with a "federal character" that the state had to comply with the federal environmental statutes even if it withdrew the project from federal funding participation.  Id. at 489. Simply put, "there is a point in the on-going federal-state relationship under Federal-Aid Highway Act programming at which the requirements of NEPA must be met."  Id.

We find the analysis of Scottsdale Mall persuasive.  At the advanced stage of the trafficway project, it was simply too late for the state of Kansas to convert the eastern

segment into a local project. Since 1986, local, state and federal authorities scheduled, programmed and worked on the trafficway as a joint federal-state project. The federal nature of the trafficway was so pervasive that the Kansas authorities could not rid the project of federal involvement simply by withdrawing the last segment of the project from federal funding. See Scottsdale Mall, 549 F.2d at 488.

Defendants assert that § 145 gives the state the authority to convert the eastern segment into a local project. See supra n.3. To be sure, § 145 guarantees to states the right to select which of many transportation projects shall receive FAHA assistance. Section 145 does not, however, authorize states to circumvent compliance with NEPA by persuading FHWA to withdraw from participation in a portion of a selected project. See Scottsdale Mall, 549 F.2d at 488; see also Los Ranchos, 906 F.2d at 1482 (noting that there was no showing that the local defendants were trying to evade federal environmental requirements). See Scottsdale Mall, 549 F.2d at 488. In other words, once the federal government is pervasively involved in every stage of a federal-aid highway project, § 145 does not allow states to withdraw a portion of the project from federal funding consideration with the resulting effect of avoiding compliance with federal environmental laws. Therefore, the decision by KDOT and Douglas County not to use additional federal funds on the eastern leg of the project did not change the fundamental nature of this project as a "major federal action" or relieve the state of its obligation to comply with NEPA. We do not, however, define the precise point at which a federal

14

project becomes immutably federal for purposes of NEPA compliance. We conclude only that the South Lawrence Trafficway was so imbued with a federal character that the eastern segment of the project could not be "defederalized."

Defendants rely heavily on Los Ranchos, 906 F.2d 1477 (10th Cir. 1990), to argue that the eastern segment is not a major federal action. We find nothing in Los Ranchos, however, which supports Defendants' decision to "defederalize" the eastern segment of the South Lawrence trafficway. Los Ranchos is distinguishable from the present case because of the nature and degree of federal involvement with the transportation project at issue in that case.

In Los Ranchos, FHWA had only preliminary involvement in the project. FHWA's involvement was limited to assistance with the preparation of the EIS and approval of the final EIS. As of the date of the approval of the EIS, "federal involvement in the . . . [project] came to an end." Los Ranchos, 906 F.2d at 1479. Importantly, the state did not request or receive federal funding for the construction of the project. Id. The only federal funds expended were $59,000 incurred in connection with the preparation of the EIS. Although the project remained eligible for federal funding, we concluded that "eligibility in itself is not sufficient to establish a major federal action requiring the FHWA to comply with the requirements of NEPA." Id. at 1481. Our case differs significantly from Los Ranchos. First, it differs because federal funding was sought and

15

appropriated[5] for the trafficway, including the 31st Street segment.  Second, it is distinguishable because FHWA participation continued long after the initial EIS was completed and approved, unlike Los Ranchos where federal involvement ceased at the preliminary planning stages of the project.  Thus, we do not find Defendants' reliance on Los Ranchos persuasive.

## C.

Although we agree with the district court's conclusion that § 145 does not permit the state to "defederalize" the eastern segment of the trafficway, we do not adopt the district court's analysis.  See Gowan v. U.S. Dept. of Air Force, 148 F.3d 1182, 1189 (10th Cir. 1998) (we may affirm the district court on any ground supported by the record).  The district court based its decision on the trafficway's status as a demonstration project, distinguishing between demonstration projects, which are expressly selected and funded by Congress, and "normal" federal-aid highway projects, which the states prioritize and for which appropriations are not specifically designated.  The district court concluded that the state sovereignty provision of § 145 of the FAHA does not apply to demonstration projects.  If it did, the district court opined, § 145 would "eliminate demonstration

---

[5] Defendants make much of the fact that all but $108,000 of the $10.4 million appropriated for construction of the trafficway was spent on the three western segments. We do not find this determinative.  To do so would mean that a state could request and accept federal funds for a highway project, spend all the allocated funds on only a portion of the project and then avoid NEPA compliance for the remainder of the project, arguing that no federal funds had been expended.

16

projects for all intents and purposes." 972 F.Supp. at 561. The court was concerned that, in effect, the application of § 145 to demonstration projects would allow states to rewrite appropriations bills. Thus, the district court concluded that because "Congress appropriated over $10 million in demonstration funds for a fourteen-mile Trafficway, not a four-mile nor a ten-mile highway . . . [t]he conditions attached to the grant of federal funds to the state [for the trafficway] are unequivocal." Id.

Although well-reasoned, the district court's analysis did not have the benefit of a recent amendment to § 145,[6] which Defendants contend directly contradicts the district court's analysis. Based upon the amendment's plain language, Congress apparently intended for demonstration projects to be treated no differently than any other federal-aid highway projects for purposes of the state sovereignty provision of § 145. We need not decide the effect of this amendment on this case, however, because § 145, either in its

---

[6] On June 9, 1998, President Clinton signed into law the Transportation Equity Act for the Twenty First Century, Pub. L. No. 105-178, § 1601(b). The Act amends § 145 by (1) creating subsection (a) consisting of the original provision of § 145 and entitled "Protection of State Sovereignty"; and (2) adding subsection (b) which provides as follows:

> Purpose of Projects — The projects described in . . . section 149(a) of the Surface Transportation and Uniform Relocation Assistance Act of 1987 [STURRA] are intended to establish eligibility for Federal-aid highway funds made available for such projects . . . and are not intended to define the scope or limits of Federal action in a manner inconsistent with subsection (a).

Section 149(a) of STURRA created the demonstration project at issue in this case.

17

original form or as amended, does not authorize Kansas to circumvent federal environmental laws by withdrawing a segment of the trafficway from federal funding at this late stage in the project.

D.

In the alternative, Defendants argue that the district court erred by granting injunctive relief requiring FHWA to issue a final SEIS without first allowing FHWA to determine whether an SEIS was needed to complete the project. We review the district court's grant of an injunction for abuse of discretion. Law v. National Collegiate Athletic Ass'n, 134 F.3d 1010, 1016 (10th Cir. 1998).

The district court's injunction prevents Defendants from "taking any action and expending any funds on the eastern leg of the Trafficway prior to completion of the supplemental environmental impact statement process, issuance of a final supplemental environmental impact statement, and entry of a new Record of Decision." 972 F.Supp. at 563. Defendants argue that the injunction "impermissibly usurped the agency's discretion" by ordering the SEIS. We disagree. Courts have routinely recognized the appropriateness of injunctive relief requiring the preparation or completion of an EIS or SEIS. See Sierra Club v. Hodel, 848 F.2d 1068, 1096-97 (10th Cir. 1988) (enjoining construction pending completion of NEPA studies) (overruled on other grounds by, Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970 (10th Cir. 1992); Wisconsin v. Weinberger, 745 F.2d 412, 428 (7th Cir. 1984) ("An order requiring the

18

preparation of an SEIS, of course, may always be appropriate to vindicate the purposes of NEPA"); Environmental Defense Fund v. Tennessee Valley Auth., 468 F.2d 1164, 1168 (6th Cir. 1972) (requiring completion of EIS prior to construction of project).

The district court in this case did not "usurp" FHWA's discretion by ordering FHWA to complete the SEIS process. The injunction merely remedies the improper agency conduct in this case, that is, FHWA's discontinuance of the SEIS process and withdrawal as lead agency from the trafficway. Therefore, the district court did not abuse its discretion in ordering the relief.

## III.

We sympathize with the state and county's desire to complete the last segment of the South Lawrence Trafficway, and indeed they thought they had found a way to complete it. However, as the Fifth Circuit explained in San Antonio, "[n]o one forced the State to seek federal funding, to accept federal participation, or to commence construction of a federal aid highway. The State, by entering into this venture, voluntarily submitted itself to federal law." 446 F.2d at 1028. The state of Kansas and Douglas County chose to develop this trafficway in conjunction with the federal government as a federal-aid highway project and proceeded in that manner for more than ten years before attempting to "defederalize" a portion of the project. Although states may, in appropriate circumstances, choose to construct a highway project as a purely local undertaking and, as a result, avoid federal environmental laws, this is not that case. Kansas and Douglas

19

County's attempt to withdraw a portion of the trafficway from federal funding, after the project hit an environmental road block, does not relieve FHWA of its statutory obligation to comply with NEPA. Therefore, FHWA abused its discretion by discontinuing the SEIS process and withdrawing from the eastern leg of the trafficway.

For these reasons, the decision of the district court is

AFFIRMED.