ALHAMBRA HOSPITAL; Memorial Hospital of Gardena, Plaintiffs–Appellants,

v.

Tommy G. THOMPSON,* Secretary, United States Department of Health and Human Services, Defendant–Appellee.

No. 99–57009.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2001

Filed Aug. 7, 2001

ers.

* Tommy G. Thompson is substituted for his predecessor, Donna E. Shalala, as Secretary of Health and Human Services. Fed. R.App. P. 43(c)(2).

**1072**

Jonathan P. Neustadter and Laurence D. Getzoff, Hooper, Lundy & Bookman, Inc., Los Angeles, California, for the plaintiffs-appellants.

Mark S. Davies, Department of Justice, Civil Division, Washington, D.C., for the defendant-appellee.

Before: RYMER, HAWKINS, and RONALD M. GOULD, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

We are again confronted [1] with the failure of the Secretary of Health and Human Services ("the Secretary") to implement properly the "disproportionate share" provision of the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi). This provision provides for increased Medicare reimbursement to hospitals that serve a disproportionate number of low-income patients.

The plaintiffs, Alhambra Hospital and Memorial Hospital of Gardena ("the Hospitals"), contend that the Secretary has impermissibly excluded subacute patient days from the calculation of the dispropor-

tionate share reimbursement. We conclude that the Secretary's actions here are contrary to the plain meaning of the governing regulation.

## BACKGROUND

### A. Legal Background

Part A of the Medicare program provides basic health coverage for elderly and disabled people. 42 U.S.C. § 1395c. Reimbursement of hospitals is carried out by fiscal intermediaries pursuant to regulations and policies of the Department of Health and Human Services ("HHS"), and HHS's Health Care Financing Administration ("HCFA").

Prior to 1983, hospitals were reimbursed under Part A for their reasonable costs. In 1983, Congress replaced this procedure with a prospective payment system ("PPS"), under which hospitals are paid a fixed predetermined rate for each hospital discharge based on the patient's diagnosis related group. 42 U.S.C. §§ 1395ww(d)(2),(d)(3).

PPS is not used to reimburse hospitals for long-term care. Therefore, skilled nursing facility ("SNF") care is not included in the PPS reimbursement. Hospitals with SNF units certified by Medicare are reimbursed under a different mechanism. 42 C.F.R. § 413.1(g).

Hospitals that treat a disproportionate number of low-income patients are also entitled to a disproportionate share hospital ("DSH") payment. This payment is calculated primarily by the sum of two fractions. The first, relating to Medicare patients eligible for supplemental security income is not at issue here. The second fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the num-

---

1. *See infra,* n. 4.

ber of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under [the Medicaid program], but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). This calculation, known as the "Medicaid proxy," therefore bases Medi*care* reimbursement in part on Medi*caid* patient days. The statute, however, is not meant to reimburse disproportionate Medicaid expenditures. A separate provision governs Medicaid reimbursement for hospitals with a disproportionate share of low-income patients. 42 U.S.C. § 1396r–4.

The Secretary has issued a regulation defining the statutory phrase "hospital's patient days." The interpretation of this regulation lies at the heart of this dispute:

> The number of patient days includes only those days attributable to areas of the hospital that are subject to the prospective payment system and excludes all others.

42 C.F.R. § 412.106(a)(ii). The appellants do not challenge the validity of the regulation; rather, they contend that the Secretary has applied this regulation to them in direct contradiction to its plain meaning.

## B. Factual Background

The Hospitals both operate "subacute" care units. These units are classified under California's Medi–Cal program as units that provide less intensive care than do acute care units, but more intensive skilled nursing care than is typically provided in an SNF. 22 C.C.R. § 51124.5(a). California licenses these units as SNFs, although they are not certified as such by Medicare. The Hospitals sought to include patient days in the subacute units as part of their DSH calculation. The fiscal intermediary rejected this inclusion, and

the Hospitals sought administrative review.

The Provider Reimbursement Review Board ("PRRB") ruled unanimously in favor of the hospitals after an extensive evidentiary hearing, finding that the subacute units were not exempt from PPS and therefore must be included in the DSH calculation. The PRRB concluded that the subacute units provided care that was closer to inpatient acute care than to SNF care. It also noted that California's classification of care levels was irrelevant for purposes of the federal Medicare program. Finally, the PRRB found that the Hospitals' position was consistent with HCFA policy, pointing to a 1992 letter from an HCFA regional administrator that stated that subacute unit days were to be included in the DSH calculation. It also pointed to HCFA's inclusion of transitional inpatient care days in the DSH calculation. The PRRB could find no significant difference between these days and subacute days. Accordingly, the PRRB ordered the fiscal intermediary to include the Hospitals' subacute days in the DSH calculation.

The fiscal intermediary then sought review from the Administrator of HCFA, to whom the Secretary has delegated the authority to reconsider PRRB decisions. The Administrator reversed the PRRB, finding that each of the Hospitals had "failed its burden of proof to demonstrate that the [ ] beds at issue are to be included as inpatient hospital beds for purposes of calculating the [PPS DHS adjustment]." The Administrator held:

> The record is uncontested that the beds at issue were licensed by the State of California as SNF beds. Skilled nursing facility beds, whether certified by Medicare or not certified by Medicare, are not attributable to areas of the "hospital" that are subject to PPS.

The Administrator also found that the 1992 letter from a Regional Office was not "persuasive evidence as to HCFA policy." The Administrator's decision represented final agency action.

The Hospitals then filed suit in federal district court, challenging the Secretary's exclusion of the subacute beds from the DSH calculation. The district court granted the Secretary's motion for summary judgment, ruling that "exclusion of subacute patient days from the DSH calculation is consistent with the plain language of the governing regulation." The court found that "non-reimbursable services do not need to be exempted from PPS because they are not covered to begin with." The court also found that there was "inadequate evidence of a prior, consistent interpretation in conflict with the Secretary's current position."

The Hospitals filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

### ANALYSIS

### I. Standard of Review

■ Our review of an agency's interpretation of its own regulations is extremely deferential. The "agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (internal quotations and citations omitted). That is, we must defer to an agency's interpretation unless an "alternate reading is compelled by the regulation's plain language." *Id.* "This broad deference is all the more warranted when ... the regulation concerns a complex and highly technical regulatory program." *Id.* (internal quotations and citations omitted).

■ We review the district court's grant of summary judgment de novo. *Weiner v.*

*San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000).

### II. The Plain Language of the Relevant Regulation

■ The relevant regulation states, "The number of patient days includes only those days attributable to *areas* of the hospital that are subject to the prospective payment system and excludes all others." 42 C.F.R. § 412.106(a)(1)(ii) (emphasis added). The regulation as written is not ambiguous. The definitional boundary, chosen by HCFA, is geographic: If a Medicaid patient day is attributable to an area of the hospital subject to PPS, it is included; if not, it is excluded.

The sole issue in this case is whether the Hospitals' subacute Medicaid patient days are "attributable to areas of the hospital" that are subject to PPS. To determine whether an area of the hospital is subject to PPS, we must turn to other regulations. The scope of PPS is defined by 42 C.F.R. § 412.20(a):

> Except for services described in paragraph (b) of this section, all covered inpatient hospital services furnished to beneficiaries during subject cost reporting periods are paid for under the prospective payment systems.

That is, all covered inpatient services are presumed to be covered under PPS, unless they meet specific requirements for an exception. Under these requirements, SNF units must meet strict requirements to be excluded from the PPS system. 42 C.F.R. §§ 412.25, 412.29. An SNF that does not meet these requirements will not receive the benefit of exemption from PPS.

Obviously, an area of a hospital is either subject to PPS or it is not. The regulations begin with the presumption that an area is covered by PPS, unless specifically exempted. The Hospitals here have never applied to exempt these units from PPS as

SNFs, nor has Medicare ever certified these units as PPS exempt. The only plausible reading of the governing regulations is that these subacute units are subject to PPS. If we were to adopt the Secretary's interpretation, the entire framework established in §§ 412.25 and 412.29 for PPS exemption would be meaningless. These provisions only make sense against a background assumption of PPS coverage. An SNF that fails to comply with the strict requirements for exemption is subject to PPS.[2] There is no rational reason why subacute units would be treated any differently. Since the Hospitals' subacute units were subject to PPS, the patient days attributable to these units should have been included as part of the DSH calculation.

We are unpersuaded by the Secretary's arguments to the contrary. The Secretary argues that these subacute units did not need to be specifically exempted from PPS because subacute care is not a "covered inpatient hospital service" under Medicare. The HCFA Administrator concluded:

> [T]o be included in the Medicare DSH calculation, the bed day must be an inpatient subsection (d) "hospital" bed day. Although the SNF beds at issue are not excluded Medicare-certified SNF beds, the beds, for similar reasons cannot be counted as an inpatient PPS hospital bed day. Just as the Medicare-certified SNF beds are excluded, *inter alia* because they are not "hospital" beds, and thus are not subject to inpatient hospital PPS, similarly, the beds at issue here are not inpatient "hospital" beds and thus are not subject to inpatient hospital PPS.

According to the Secretary, only areas that provide Medicare-covered services need to be specifically exempted from PPS.

This argument might be relevant in a case about the scope of Medicare coverage for inpatient services. But it is entirely beside the point in the context of the DSH reimbursement. By definition, the DSH reimbursement is calculated on the basis of services that not only are not covered by Medicare, but are actually *prohibited* from reimbursement through Medicare. The statute explicitly states that the Medicaid proxy includes those patient days for which the patient was eligible for Medicaid, "*but who were not entitled to benefits under part A of this subchapter.*" 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). Therefore, no patient days included in the Medicare proxy are *ever* payable under PPS.

This basic fact about Medicare coverage is reflected in the regulation at issue. It refers to "*areas* of the hospital that are subject to the prospective payment system." 42 C.F.R. § 412.106(a)(1)(ii) (emphasis added). It does *not* refer to "*services* of the hospital that are subject to the prospective payment system" or to "*patients* of the hospital that are subject to the prospective payment system." The regulation by its terms requires an analysis of particular units. Whether the subacute units provide Medi*care* services to inpatients is wholly irrelevant for determining what counts as a Medi*caid* patient day.[3]

■ The "overriding intent" of Congress in establishing the DSH reimburse-

---

**2.** The Secretary's suggestion that California's licensing of the Hospitals' subacute units as SNFs is equivalent to a formal exemption from PPS strikes as wholly without merit.

**3.** The parties dispute whether the services provided in the subacute units are covered by

Medicare. We need not resolve this issue to decide this appeal. We note, however, that the Secretary has not pointed to any statute or regulation that excludes subacute services from Medicare reimbursement.

ment was to "supplement the prospective payment system payments of hospitals serving low-income persons." *Legacy Emanuel Hosp. & Health Center v. Shalala*, 97 F.3d 1261, 1265 (9th Cir.1996) (quoting *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 272 (6th Cir. 1994)).[4] The DSH payments are in addition to, and separate from, the ordinary PPS payments. Hospitals that treat a significant number of low-income patients incur higher costs "because those patients historically require comparatively greater resources in their care." *Jewish Hosp.*, 19 F.3d at 275.[5]

In sum, since the Medicaid proxy is *never* calculated or based on its effect on Medicare reimbursement, the Secretary's contention that subacute services are excluded because Medicare supposedly does not cover them is an impermissible reading of the regulation. *Cf. Clark Reg'l Med. Ctr. v. Shalala*, 136 F.Supp.2d 667, 676 (E.D.Ky.2001) (holding, in an analogous context, that the Secretary's refusal to include "swing-bed" facilities in the DSH adjustment "tortures the plain language of the regulation," and stating "a plain and common sense reading of the regulation requires that all beds and all bed days be included in the calculation unless they are

in one of the specifically enumerated categories of excluded beds").

## CONCLUSION

We fully agree with a sister Circuit that the Medicare and Medicaid provisions "are among the most completely impenetrable texts within the human experience." *Rehab. Ass'n of Virginia v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir.1994). We also recognize that the Secretary is entitled to considerable deference in interpreting his own regulations, particularly in a regulatory scheme as complex as Medicare. But not every Medicare provision is of Delphic obscurity, explicable only through the Secretary's oracular powers. This regulation is plain on its face, and requires the inclusion of the subacute patient days as part of the DSH reimbursement.

**REVERSED.**

---

4. The *Jewish Hospital* court found "credible and compelling" evidence of Secretarial "hostility to the concept of the disproportionate share adjustment." 19 F.3d at 276. Specifically, the court invalidated the Secretary's regulation that restricted "patient days" in the Medicaid proxy to include only those days actually covered by Medicaid. Many other courts, including this one, agreed with the *Jewish Hospital* decision. *See Legacy Emanuel*, 97 F.3d at 1266; *Cabell Huntington Hosp., Inc., v. Shalala*, 101 F.3d 984 (4th Cir.1996); *Deaconess Health Servs. Corp. v. Shalala*, 912 F.Supp. 438 (E.D.Mo.1995). The Secretary has since modified that regulation. 42 C.F.R. § 412.106(b)(4)(i).

5. The Secretary also argues that DSH payments are intended to reimburse only the increased costs of treating Medicare patients. He suggest that the Hospitals must prove that treatment of Medicaid patients in subacute units increased their Medicare costs. We find no support for these arguments. In enacting the DSH provision, Congress made the policy decision that hospitals that treat a large number of low-income patients, including those covered by Medicaid, should receive additional payments. HCFA may not like this decision, but it is no more free to disregard the considered policy decision of Congress than are we.